## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CR 05-0924 RB |
| | ) | |
| LARRY LUJAN, KACEY LAMUNYON, and | ) | |
| EUGENIO MEDINA | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

THIS MATTER comes before the Court following the July 30, 2007 status conference and the Government's decision to seek the death penalty as to Defendant Lujan, but not as to either Defendant Lamunyon or Defendant Medina.  (*See* Govt's Notice [Doc. 147].)  For the reasons that follow, **as to Defendant Medina**: (1) Brian Pori will be relieved as counsel of record; and (2) Billy Blackburn will remain counsel of record; and (3) Attorney Blackburn will continue to be paid at the Criminal Justice Act ("CJA") capital-case hourly compensation rate.

I.    **Background.**

Defendants (Larry Lujan, Kacey Lamunyon and Eugenio Medina) are each charged with: (1) "Kidnaping Resulting in Death," in violation of 18 U.S.C. § 1201(a)(2) and 18 U.S.C. § 2; as well as (2) "Tampering with a Witness Resulting in Death," in violation of 18 U.S.C. § 1512(a)(1)(C) and 18 U.S.C. § 2.  Defendants allegedly kidnaped Dana Joseph Grauke (age sixteen), in San Antonio, Texas, on or about March 7, 2005, and killed him, in Doña Ana County, New Mexico, on or about March 8, 2005.  (*See* Third Superceding Indictment [Doc. 145] 1.)  Both pending counts constitute death-penalty eligible offenses.  18 U.S.C § 1201(a)(1) (crime "shall be punished by imprisonment

for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment"); 18 U.S.C. §§ 1512(a)(1)(C), (a)(3) ("punishment for an offense under this subsection is . . . the death penalty or imprisonment for life").

Because they were "indicted for . . . [a] capital crime," this Court granted Defendants' requests that they be appointed two attorneys each.  18 U.S.C. § 3005; *see In re Sterling-Suarez*, 306 F.3d 1170, 1171 (1st Cir. 2002) (18 U.S.C. § 3005 requires, upon defendant's request, district court to appoint two counsel "promptly after indictment").  Each defense team is comprised of: (1) lead counsel; and (2) "learned counsel."  *See* 18 U.S.C. § 3005 ("[A]t lease 1 shall be learned in the law applicable to capital cases.").  Defendant Medina is represented by lead counsel Billy Blackburn and learned counsel Brian Pori.  Counsel were each appointed at the Criminal Justice Act ("CJA") capital-case hourly compensation rate.  *See* Administrative Office of the Courts, *Guide to Judiciary Policies and Procedures*, v. 7, § 6.02.A.1.a; 18 U.S.C. § 3006A(d).

On July 12, 2007, the Government filed its Notice of Intent to Seek a Sentence of Death (Doc. 147), only as to Defendant Lujan.[1]  At the July 30, 2007 status conference, the Court raised whether - in light of the Government's Notice - the number of appointed counsel for Defendant Lamunyon and Defendant Medina should be reduced, and, in any event,  if the compensation rate for appointed counsel should be reduced to the "non-capital" hourly CJA rate.  In response, counsel for Defendant Medina maintained that: (1) one appointed attorney was now appropriate for Defendant Medina's defense; (2) Attorney Blackburn should remain counsel of record, given that he was appointed on August 15, 2005, while co-counsel Attorney Pori was appointed on August 29, 2006;

---

[1]Though the Government's Notice itself does not affirmatively state that it will not seek the death penalty as to Defendants Medina and Lamunyon,  at the June 6, 2007 status conference, the Government announced that the U.S. Attorney General's Capital Case Review Committee ("Committee") had not certified either of these defendants.

2

and (3) that Blackburn should continue to be paid at the capital-case rate.  For the reasons that follow, the Court agrees.

II.    **Discussion.**

    A.    **Number of Appointed Counsel: Defendant Medina is no longer statutorily entitled to two court-appointed attorneys.**

      "The right to appointment of two attorneys in federal capital cases is a well established one." *United States v. Waggoner*, 339 F.3d 915, 917 (9th Cir. 2003) ("Congress first created such a right in 1790").  Today, that right is codified at 18 U.S.C. § 3005:

> Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a 1judge thereof, shall promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases . . . . In assigning counsel under this section, the court shall consider the recommendation of the Federal Public Defender organization . . . .

18 U.S.C. § 3005.  Section 3005 does not define "capital crime."   As such, the statute does not expressly address the issue presented here: whether, regardless of the Government's formal notice that it will not seek the death penalty, Defendants are entitled to retain two appointed counsel.

      Notably, however, a majority of the courts of appeal that have interpreted this provision of § 3005 have recognized that the two-attorney requirement is "derived from the severity of *punishment* rather than the nature of the offense."  *Waggoner*, 339 F.3d at 918 (emphasis added) (internal quotation marks and citation omitted).  *Accord United States v. Grimes*, 142 F.3d 1342, 1347 (11th Cir. 1998) (holding that defendant was "properly denied benefits afforded to a capital defendant because the Government stipulated that it would not seek the death penalty and thereby transformed this case into a non-capital proceeding"); *United States v. Shepherd*, 576 F.2d 719, 729 (7th Cir. 1978) (pre-1994 amendment) (same); *United States v. Weddell*, 567 F.2d 767, 770-71 (8th

3

Cir. 1977) (pre-1994 amendment) (same); *see also See United States v. Rodriguez-Berrios*, 385 F.

Supp. 2d 134, 136 (D.P.R. 2005) (recognizing that the "majority of the Circuits" have held that §

3005 only entitles a defendant to two counsel "while he is exposed to the death penalty."); *but see*

*United States v. Boone*, 245 F.3d 352, 358 (4th Cir. 2001) (2-1 decision) (concluding that § 3005

"provides an absolute statutory right to two [court-appointed] attorneys in cases where the death

penalty may be imposed"). *See generally United States v. Fields*, 483 F.3d 313, 348 (5th Cir. 2007)

(recognizing circuit split).

This majority view provides that, once the government declines to seek the death penalty, an

otherwise death-penalty eligible case ceases to be a "capital case" for § 3005 purposes. *Waggoner*,

339 F.3d at 918. Accordingly, with death eliminated as a potential punishment, the defendant is "'no

longer [a] capital defendant[]' and, thus," § 3005's two-attorney requirement is inapplicable." *Id.*

(quoting *United States v. Casseus*, 282 F.3d 253, 256 & n.1 (3d Cir. 2002)). Material to this

reasoning is that, § 3005 was enacted to afford additional resources to defendants who may be put

to death. *See id.*

Notably, although the Tenth Circuit has not squarely addressed this issue, the majority

interpretation of § 3005's two-attorney requirement is consistent with related Tenth Circuit precedent.

First, this outcome is mandated by the Tenth Circuit's finding in *United States v. Maestas*, 523 F.2d

316 (10th Cir. 1975), that a "case los[es] its capital nature as charged in the indictment" and, as such,

a defendant is no longer entitled to benefits reserved for defendants in "capital cases." *Id. Maestas*'s

interpretation of Rule 24(b)(1) - which, at that time, afforded capital defendants additional

peremptory jury challenges - as with this Court's reading of § 3005, was derived from that provision's

purpose. Like § 3005, Rule 24(b)(1)'s provisions reflect the nature of the punishment possibly facing

4

a capital defendant, regardless of the underlying offense itself. *Waggoner*, 339 F.3d at 918 ("the term 'capital crime' as used in § 3005 does not encompass the *underlying offense* when capital punishment cannot be imposed" (emphasis added)).

Second, the majority view is consistent with *United States v. McCullah*, 76 F.3d 1087, 1098 (1996), which considered § 3005's "learned in the law" requirement as it existed prior to 1994. In 1994, Congress amended § 3005 to require "learned counsel" to be "learned in the law *applicable to capital cases.*" *Id*. (emphasis added to indicate language added by 1994 amendment). *McCullah* held that this change created a new substantive requirement. *Id*. Put simply, *McCullah*'s interpretation provides further evidence that Congress's purpose in enacting § 3005 is tied to the severity - i.e., the nature - of capital punishment. *See id*. at 1098 (post-1994 version of § 3005 creates a new substantive requirement that learned counsel appointed under § 3005 "have prior capital punishment experience").

Therefore, because the "threat that the death penalty will be imposed [in his case] has been eliminated," Defendant Medina is no longer "subject to 'indictment' for a 'capital crime'" for § 3005 purposes. *Waggoner*, 339 F.3d 919; *see also Maestas*, 523 F.2d at 318. Defendant Medina is, therefore, not statutorily entitled to two court-appointed attorneys. *See In re Sterling-Suarez*, 306 F.3d at 1171-72 (noting that, while the issue was not before it, other courts had "declined to provide to the defense . . . advantages peculiar to capital cases unless the death penalty is actually sought").

**B.     Number of Appointed Counsel: Court will not exercise its discretion to continue the appointment of two counsel for Defendant Medina.**

At the same time, this Court certainly has the discretion to order the continued appointment of two counsel for Defendant Medina should it be warranted. *See United States v. Steel*, 759 F.2d 706, 710 (9th Cir. 1985). Therein, the Administrative Office of the U.S. Courts' *Guide to Judiciary*

5

*Policies and Procedures* provides guidance in this regard.  That resource states that:

> If, following the appointment of counsel in a case in which a defendant was charged with an offense that may be punishable by death, it is determined that the death penalty will not be sought, the court should consider the questions of the number of counsel . . .  needed for the duration of the proceeding.

Admin. Office of the U.S. Courts, Guide to Judiciary Policies & Procedures ("AO Guide" or "the Guide"), vol. VII, chap. VI, part B, § 6.02.B.2; *see id*. § 6.02.F.3.c.iii. ("as soon as practicable after a decision not to seek the death penalty, the number of appointed counsel and hourly rate of compensation should be reviewed in accordance with subparagraph 6.02 B(2)").

Notably, the AO Guide underscores that "absent *extenuating* circumstances," a court should make an "appropriate reduction in the number of counsel."  *Id*. § 6.02.B.2 (emphasis added).  It identifies four factors that courts should consider in "deciding whether there are extenuating circumstances":

> (a) the need to avoid disruption of the proceedings;
> (b) whether the decision not to seek the death penalty occurred late in the litigation;
> (c) whether the case is unusually complex; and
> (d) any other factors that would interfere with the need to ensure effective representation of the defendant.

*Id*. (emphasis added).

Such extenuating circumstances do not exist in Defendant Medina's case.  As to the first factor, continued appointment of two counsel for Defendant Medina is not needed to "avoid disruption" of this case.  As noted above, Defendant Medina's counsel acknowledged that - in light of this Court's recent Memorandum Opinion and Order issued in *United States v. Smalls*, CR 06-2403 RB (Mem. Op. & Order of 6/11/07) - one appointed attorney for Defendant Medina is appropriate.  Counsel's presentation to the Court, instead, underscored that: (1) Attorney Blackburn should remain counsel of record, given that he was appointed to the case a year before Attorney Pori;

6

and (2) even if learned counsel is relieved, learned counsel Pori will remain available to Defendant Medina, as a consultant, should his services be required.

The Court is confident that lead counsel Blackburn is quite able to effectively represent Defendant Medina in this matter without co-counsel, especially given the recently changed posture of the Government's case against Defendant Medina, as well as Attorney Pori's willingness to make himself available going forward.  Accordingly, the Court is certain that relieving Attorney Pori as appointed counsel for Defendant Medina, while retaining Attorney Blackburn, will not disrupt the proceedings.

As to the second factor, the Government made its decision not to seek the death penalty sometime after it initiated this proceeding.  The Government's Notice was filed more than two years after the initial, Sealed Indictment issued.  In the Court's experience, compared to other death-penalty eligible cases, the Government reached its decision after considerable delay.  This element weighs in favor of continued appointment of two CJA counsel for Defendant Medina.

As to the third and fourth factors, the Court recognizes that this is a complex case.  This is particularly so because Defendant Medina's co-defendant, Defendant Lujan: (1) has been certified for the death penalty; and (2) is facing state charges related to a 1998 double homicide, which - although unrelated to the instant prosecution - have complicated the discovery process.  Nevertheless, notwithstanding these complexities, this case is not "*unusually* complex" for a death-penalty eligible case.  AO Guide, vol. VII, chap. VI, part B, § 6.02.B.2.  Nor are there "other factors" such that two-court appointed attorneys are needed to ensure Defendant Medina will receive effective representation.  *Cf.*, *e.g.*, *United States v. Gonzales*, No. CR-95-538-MV, 1997 WL 155403, at *1 (D.N.M. Feb. 11, 1997), *vacated, in part, on other grounds by* 150 F.3d 1246, 1251 (10th Cir. 1998)

7

(two attorneys appointed for each defendant facing the death penalty; one attorney appointed for remaining defendants) (prosecution involving twenty-three defendants indicted for, *inter alia*, murder, attempted murder, drug distribution, and racketeering"); *United States v. Garcia*, No. 01 CR 1110(GEL), 2004 WL 1794489, at *1 (S.D.N.Y. Aug. 11, 2004) (ordering continued appointment of two counsel per defendant, even after government announced it would not seek the death penalty) (defendants charged with "various counts of narcotics trafficking and murder in furtherance of an alleged criminal enterprise . . . [which] allegedly occurred over a period of about ten years"); *United States v. Davidson*, No. 92 Cr. 35, 1992 WL 165825, at *4-*6 (N.D.N.Y. July 10, 1992) (same) (noting the complexity of the case given: (1) "multiple prior state court proceedings and their attendant voluminous transcripts"; (2) the defendants' "possibly conflicting positions"; and (3) the complex and challenging nature of the crimes charged, "especially the murder of a law enforcement officer").  In reaching this decision, the Court again underscores its confidence in the abilities of appointed counsel.

For the aforementioned reasons, Defendant Medina's case does not present "extenuating circumstances."  Attorney Blackburn will remain appointed counsel; Attorney Pori will be relieved as counsel of record.[2]

## C.      Compensation: Appointed counsel will be compensated at the CJA capital-case rate.

The AO Guide also provides guidance regarding the appropriate compensation rate for appointed counsel - i.e., the capital rate versus the non-capital rate.  In applicable part, the Guide

---

[2]The Court notes that it believes its decision is, not only equitable to the parties, but is also the best use of finite public funds apportioned under the CJA.  Additionally, the Court wishes to clarify that, though lead counsel will remain counsel of record here, Attorney Blackburn's "lead counsel" status did not, as noted herein, dictate this outcome.

states that:

> If, following the appointment of counsel in a case in which a defendant was charged with an offense that may be punishable by death, it is determined that the death penalty will not be sought, the court should consider the questions of . . . the rate of compensation needed for the duration of the proceeding.

Admin. Office of U.S. Courts, Guide to Judiciary Policies & Procedures ("AO Guide"), vol. VII, chap. VI, part B, § 6.02.B.2; *see id*. § 6.02.F.3.c.iii. ("as soon as practicable after a decision not to seek the death penalty, the number of appointed counsel and hourly rate of compensation should be reviewed in accordance with subparagraph 6.02 B(2)").  Further, the AO Guide advises that:

> the court should, *absent extenuating circumstances*, reduce (only prospectively) the compensation rate. In determining whether there are extenuating circumstances, the court should consider the following factors:
>
> > (a) the extent to which this representation precludes counsel from taking other work;
> > (b) the commitment of time and resources counsel has made and will continue to make in the case; and
> > (c) the need to compensate appointed counsel fairly.

*Id*.  (emphasis added).

The Court gave all three factors due consideration, but finds the first factor most weighty in its reasoning.  This case's complexity and unique challenges, discussed above, are likely to require an inordinate amount of Attorney Blackburn's time and resources.  This may well affect his ability to maintain a full caseload.  As such, Blackburn's continued appointment at the higher capital-case rate is appropriate.

**III.    Conclusion.**

For all the foregoing reasons, Defendant Medina is not entitled to two court-appointed attorneys, *Waggoner*, 339 F.3d at 917-919, and this Court does not find - as a matter of judicial discretion - that continued appointment of two counsel is warranted.  *See* AO Guide, vol. VII, chap.

VI, part B § 6.02.B.2.  Attorney Brian Pori is **relieved** as counsel of record for Defendant Medina;

Attorney Billy Blackburn will **remain** counsel of record.  Due to the significant amount of time and

resources this case will require, counsel of record will continue to be appointed at the CJA **capital-**

**case** hourly compensation rate.

> **IT IS SO ORDERED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**